## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. _____

DEREK BENNETT,

          Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES LLC;
EXPERIAN INFORMATION SOLUTIONS,
INC.; and
SOUTHWEST RECOVERY SERVICES, LLC

          Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Derek Bennett ("Mr. Bennett" or "Plaintiff"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against Defendants Equifax Information Services LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Southwest Recovery Services, LLC ("SRS"), (collectively, "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

### JURISDICTION AND VENUE

1.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

3.      Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at the District, such that personal jurisdiction is established.

## PARTIES

4.      Plaintiff resides in Adams County, Colorado and qualifies as a "consumer" as defined and protected by the FCRA. Plaintiff is an individual, not an entity.

5.      Experian is an Ohio company that regularly conducts business in this District. Experian maintains a principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served directly at its principal place of business.

6.      Experian qualifies as a "consumer reporting agency" ("CRA") under the FCRA as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

7.      Equifax is a Georgia company that regularly conducts business in this District. Equifax maintains a principal place of business at 550 Peachtree Street, NW, H46, Atlanta, Georgia 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.      Equifax qualifies as a "consumer reporting agency" ("CRA") under the FCRA as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit

information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

9.      Southwest Recovery Services ("SRS") is a Texas company that regularly conducts business in this District. SRS maintains a principal place of business at 16200 Addison Road, Suite 260, Addison, Texas 75001. SRS can be served through its registered agent, Steven Dietz located at the aforementioned address.

10.     SRS is a financial institution that serves as a collection agency. SRS regularly furnishers consumer credit information to credit reporting agencies. Therefore, SRS is a "furnisher" of consumer credit information as that term is contemplated by 15 U.S.C. §1681s-2.

11.     At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

12.     Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

13.     Plaintiff and his wife decided they were done renting and had hopes of purchasing a home.

14.     Thereafter, Plaintiff applied for a mortgage with Navy Federal Credit Union ("Navy Federal").

15.     Plaintiff chose Navy Federal because he had other credit accounts with them and believed that this would make him more likely to be approved and receive better rates than other banks and credit unions would offer.

16.     Unfortunately, a collections account was holding everything up.

17.     The collections account at issue was Plaintiff's Kids R Kids McKinney Account ("the Account").

18.     Equifax and Experian both reference the Account utilizing different versions of the Account Number. Plaintiff's Equifax consumer reports indicate the Account Number is XXXXXXXXXX5294, and his Experian consumer reports indicate the Account Number is 986590XXXXXXXX on the Experian consumer reports.

19.     After learning the Account was the source of Plaintiff's inability to get a mortgage, Plaintiff made it a priority to settle his debt and improve his credit.

20.     In or around May 2021, Plaintiff reached out to Southwest Recovery Services ("SRS"), the collection agency handling the debt, with hopes of negotiating the $2,930 he originally owed on the Account.

21.     Plaintiff initiated settlement negotiations directly with SRS's President, Steven Dietz ("Dietz").

22.     Ultimately, the two parties agreed that Plaintiff would pay $2,000 to settle the Account. In exchange, SRS agreed to delete the Account off of Plaintiff's consumer reports.

23.     On or about May 4, 2021, Plaintiff made a payment of $2,062.35 to SRS.

24.     On or about May 4, 2021, Dietz emailed Plaintiff to confirm receipt of the payment.

25.     Dietz also informed Plaintiff that the Account now had a zero-dollar balance, and that SRS would send a deletion request to all three credit bureaus to remove this tradeline.

26.     On or about May 27, 2021, Plaintiff was denied for a mortgage by HomeSquad/Navy Federal.

27.     Plaintiff assumed that Navy Federal denied his mortgage application because the Account tradeline was still on his consumer reports.

28.     Upon information and belief, the Account tradeline was published to Navy Federal by Equifax and Experian.

29.     Upon information and belief, Navy Federal denied Plaintiff's mortgage application because Equifax and Experian were still publishing the Account tradeline.

30.     In the following weeks, Plaintiff reached out to SRS by phone around two or three times to inquire as to why the Account tradeline was still reporting an unpaid balance of $2,930 and why the Account tradeline had not been deleted from his consumer reports.

31.     Upon information and belief, the SRS representative that Plaintiff spoke with was an accountant for SRS.

32.     Upon information and belief, the SRS representative informed Plaintiff that the reason his consumer reports had not been updated yet was because SRS's system had been down.

33.     Upon information and belief, the SRS representative also informed Plaintiff that while SRS usually charges for tradeline deletion, she would go ahead and process the deletion request for Plaintiff because Plaintiff was already promised that the tradeline would be deleted.

34.     Plaintiff also regularly checked his consumer reports to see if the Account tradeline had been updated to reflect that the Account was paid with a zero-dollar balance.

35.     As Plaintiff continued to see the Account reported with an outstanding balance on his consumer reports, Plaintiff refrained from re-applying for a mortgage.

36.     Plaintiff did not want to receive any more denials and worried about the implications additional inquiries would have on his credit score.

37.    As of the filing of this Complaint, the Account is still reporting on Plaintiff's consumer reports with an outstanding balance of $2,930.

**Facts Related to Equifax**

38.    In or around June 2021, Plaintiff disputed Equifax's inaccurate reporting of the Account online.

39.    Upon information and belief, Plaintiff's June 2021 dispute informed Equifax that he had negotiated the Account with SRS and paid off the Account.

40.    Plaintiff attached proof of the settlement agreement with SRS and proof of his subsequent payment to the dispute.

41.    On or about June 12, 2021, Equifax responded to Plaintiff's dispute.

42.    The dispute response stated that "the creditor has verified to our company that the balance is being reported correctly."

43.    The Account tradeline indicated that the balance was $2,930 as of June 2021, and the status field indicated the balance was unpaid.

44.    On or about June 16, 2021, Plaintiff reviewed his Equifax consumer report again to see if the Account had been updated to reflect that the Account was paid with a zero-dollar balance.

45.    The June 16, 2021, Equifax report indicated the account had an unpaid balance of $2,930 and that "consumer disputes after resolution."

46.    On or about July 12, 2021, Plaintiff reviewed his Equifax consumer report again to see if the inaccurate information had been corrected.

47.    The July 12, 2021, Equifax report still indicated that the Account was "unpaid" with a balance of $2,930. The status date was listed as July 10, 2021.

48.    There was also a comment stating that "consumer disputes after resolution."

49.    On or about July 27, 2021, Plaintiff mailed a second dispute to Equifax via certified mail.

50.    The dispute informed Equifax that the Account was settled on May 4, 2021 and is fully paid off. Plaintiff also included his full name, date of birth, address, and social security number.

51.    Plaintiff attached copies of the payment confirmation from SRS, proof of his payment, his driver's license, and a utility bill to his dispute.

52.    Upon information and belief, the dispute letter was delivered on or about July 31, 2021.

53.    On or about August 7, 2021, Equifax responded to Plaintiff's dispute.

54.    The dispute response stated that "this creditor has verified to our company that the balance is being reported correctly. The following fields have been modified: *additional information *status date *balance date."

55.    The Account tradeline indicated that "consumer disputes—reinvestigation in process and consumer disputes after resolution."

56.    The status and balance dates were updated as of August 2021, and the report indicated that there was an unpaid balance of $2,930.

57.    On or about August 8, 2021, Plaintiff received another dispute response from Equifax.

58.    This time, the dispute response indicated that "the following fields have been modified *additional information." The additional information section stated "consumer disputes—reinvestigation in process and consumer disputes after resolution."

59.    On or about August 17, 2021, Plaintiff reviewed his Equifax consumer report using MyEquifax.

60.     Upon information and belief, the disputed portions of the Account tradeline remained unchanged, but the tradeline was updated to reflect that the balance and status were last updated on August 14, 2021.

61.     On or about October 7, 2021, Plaintiff reviewed his Equifax consumer report again.

62.     The Account tradeline still indicated that there was an unpaid balance of $2,930 and that "consumer disputes after resolution."

**Facts Related to Experian**

63.     In or around June 2021, Plaintiff disputed Experian's reporting of the Account online.

64.     Upon information and belief, Plaintiff's June 2021 dispute informed Experian that he had negotiated the Account with SRS and paid off the Account.

65.     Plaintiff attached proof of the settlement agreement with SRS and proof of his subsequent payment to his dispute.

66.     On or about June 19, 2021, Experian responded to Plaintiff's dispute.

67.     The dispute response stated that "the company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details."

68.     The Account tradeline indicated that the balance was $2,930 and last updated on June 4, 2021. The tradeline also listed a "status" of "collection account."

69.     On or about July 12, 2021, Plaintiff reviewed his Experian consumer report again to see if the inaccurate information had been corrected.

70.     Experian's July 12, 2021, report still listed the Account with a balance of $2,930, and "status" of "collection account." The balance was last updated July 10, 2021.

71.     Additionally, a comment was added that stated "completed investigation of FCRA dispute—consumer disagrees."

72.     The Experian report also listed the previous comment as "completed investigation of FCRA dispute—consumer disagrees March 2021 to June 2021," and the reinvestigation information section indicated "this item remained unchanged from our processing of your dispute in June 2021."

73.     On or about July 27, 2021, Plaintiff mailed an additional dispute to Experian via certified mail.

74.     The dispute informed Experian that the Account was settled on May 4, 2021, and is fully paid off. Plaintiff also included his full name, date of birth, address, and social security number.

75.     Plaintiff attached copies of the payment confirmation from SRS, proof of his payment, his driver's license, and a utility bill.

76.     Upon information and belief, the dispute letter was delivered on or about July 30, 2021.

77.     On or about August 10, 2021, Experian responded to Plaintiff's dispute.

78.     The dispute response stated that "the company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details."

79.     The Account tradeline indicated that the balance was $2,930 and last updated July 14, 2021.

80.     It also stated the status was "collection account" and last updated April 2018.

81.     Additionally, a comment was added that stated "completed investigation of FCRA dispute—consumer disagrees."

82.     The Experian report also listed the previous comment as "completed investigation of FCRA dispute—consumer disagrees," and the reinvestigation information section indicated "this item remained unchanged from our processing of your dispute in June 2021."

83.     On or about October 7, 2021, Plaintiff reviewed his Experian consumer report again.

84.     The Account tradeline still indicated that there was a current balance of $2,930 and the status indicated "account seriously past due date/account assigned to attorney, collection agency, or credit grantor's public collection department."

## Facts Related to All Defendants

85.     Upon information and belief, Equifax and Experian forwarded Plaintiff's dispute letters to SRS.

86.     Upon information and belief, SRS received notice of Plaintiff's four disputes from Equifax and Experian.

87.     Upon information and belief, SRS failed to conduct a reasonable investigation of one or more of Plaintiff's disputes.

88.     Upon information and belief, SRS failed to forward the results of one or more of its dispute investigations to each of the consumer reporting agencies that it furnished inaccurate or incomplete information about Plaintiff's Account.

89.     SRS promised Plaintiff that it would delete the Account tradeline as part of the settlement.

90.     SRS also admitted to Plaintiff that the Account was paid off.

91.     Despite knowing that the Account was settled and paid off, SRS continued to verify its inaccurate reporting that the Account had an outstanding balance.

92.     Therefore, SRS' conduct was willful.

93.     Consequently, Equifax and Experian continued to report inaccurate information about Plaintiff's Account.

94.     After allegedly "investigating" Plaintiff's disputes, Equifax and Experian continued to report the Account with an outstanding balance of $2,930.

95.     SRS knew that Equifax and Experian were reporting Plaintiff's Account with a balance owed within the Account tradeline but failed to update and correct the reporting to either show a zero-dollar balance or delete the tradeline altogether.

96.     Instead, Equifax and Experian continued to report an unpaid balance of $2,930.

97.     Additionally, Equifax and Experian indicated that their investigations were completed, and Plaintiff disagreed with the results.

98.     It is unclear why Equifax and Experian continued to report Plaintiff's Account with an unpaid balance after receiving Plaintiff's four disputes and accompanying documents proving the Account was paid in full and had a zero-dollar balance.

99.     Upon information and belief, both Equifax and Experian have been sued by other consumers in the past who have alleged their dispute procedures were unreasonable and violative of the FCRA.

100.    Therefore, Equifax and Experian had constructive notice as to their deficient procedures.

101.    Equifax and Experian's inaccurate reporting was particularly egregious because they had actual notice that Plaintiff did not owe a balance on the SRS Account.

102.    Equifax and Experian received two disputes each from Plaintiff in or around May/June 2021 and July 2021 — long after Plaintiff paid off the Account and SRS promised to send deletion requests to all consumer reporting agencies.

103.    Regardless of whether SRS sent deletion requests, Defendants knew the information was reporting inaccurately since Plaintiff submitted proof the account was paid in a settlement in May of 2021 and yet continued to report the full balance as past due and outstanding.

104.    Upon information and belief, Equifax and Experian have reason to believe that SRS furnishes inaccurate consumer data with some regularity.

105.    Upon information and belief, Equifax and Experian blindly relied on SRS's furnished information despite having reason to know it may be unreliable.

106.    Upon information and belief, Equifax and Experian do not maintain reasonable procedures to ensure they report consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information provided by furnishers like SRS.

107.    It is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, especially when the information provided by a furnisher conflict with information the consumer reporting agency knows to be true.

108.    Alternatively, it is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, when it directly conflicts with the documentation a consumer provides alongside his dispute(s).

109.    Upon information and belief, had Equifax and Experian not inaccurately reported the Account with an outstanding balance, Plaintiff would have been approved for a mortgage through Navy Federal.

110.    Upon information and belief, had Equifax and Experian corrected the inaccurate reporting after Plaintiff's disputes, Plaintiff would have been able to secure financing for a mortgage.

111.    In or around June 2021, Plaintiff was approved for credit through Klarna WebBank.

112.    Upon information and belief, had Experian not inaccurately reported the Account, Plaintiff would have received a higher credit limit and likely also would have been approved at more favorable rates.

113.    In or around July 2021, Plaintiff also applied for an American Express ("Amex") credit card through Navy Federal.

114.    On or about August 1, 2021, Plaintiff was approved for the Amex credit card.

115.    Navy Federal sent Plaintiff a notice that informed Plaintiff that his Experian credit score was 658 and used in determining the Annual Percentage Rate for his Amex credit card.

116.    Upon information and belief, had Experian not inaccurately reported the Account, Plaintiff would have received a higher credit limit and likely also would have been approved at more favorable rates.

117.    In or around July 2021, Plaintiff was approved for a JPMorgan Chase Bank credit card.

118.    Upon information and belief, had Experian not inaccurately reported the Account, Plaintiff would have received a higher credit limit and likely also would have been approved at more favorable rates.

119.    Upon information and belief, Equifax sold Plaintiff's consumer credit information to at least two third parties, including: Navy Federal and Capital One.

120.    Upon information and belief, Experian sold Plaintiff's consumer credit information to at least four third parties, including: JPMorgan Chase Bank, Klarna WebBank, Navy Federal, and Capital One.

121.    Plaintiff was humiliated and defamed each time the Account was published to third parties while inaccurately indicating there was an outstanding balance by Equifax and Experian.

122.    As a direct result of Defendants' conduct, Plaintiff has been frustrated and stressed for approximately 6 months.

123.    Specifically, Plaintiff and his wife are frustrated that they have had to delay their goals of moving into a house by summer 2021.

124.    Further, Plaintiff and his wife are stuck renting, and they had to extend their lease another year.

125.    In order to afford the rental payments, which are higher than a mortgage payment would be, Plaintiff has had to take money from his 401k and spend his savings.

126.    This delay in purchasing a home has also had an impact on Plaintiff through his three children, ages five, seven, and eight.

127.    Plaintiff hoped the move would allow his eldest to make new friends and provide a chance to start over at a new school. Plaintiff's eldest has endured constant bullying for over two years at school, despite getting parents, school staff, and other outside resources involved.

128.    Plaintiff and his family have also been impacted because they hoped to purchase a home where each child could have their own room, so the children would no longer have to share and be on top of each other all of the time.

129.    As a direct result of Defendants' conduct, Plaintiff has had to delay his hopes of getting a family dog.

130.    Plaintiff's landlord currently prohibits pets, and he hoped to welcome another dog into his family once he purchased a home because his previous family dog passed away before Plaintiff and his family moved to Colorado.

131.    Plaintiff is also stressed and worried because his three children hear conversations between him and his wife about financial struggles and the conduct of Defendants.

132.    Plaintiff does not want to worry his children and feels horrible that they have been involved and overheard arguments between him and his wife.

133.    Plaintiff has had trouble falling asleep and suffers from sleepless nights because of the stress and frustration Defendants caused.

134.    Plaintiff has suffered from a decreased creditworthiness, due to the negative way the Account is portrayed, instead of having the tradeline updated to reflect the Account was paid with a zero-dollar balance or completely deleted.

135.    As a direct result of Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to: reduced credit worthiness, credit denial, credit approval at less favorable rates, stress, anxiety, frustration, sleepless nights, humiliation, wasted time, financial strain, and other damages continuing in nature.

## COUNT I
### SRS's Violations of 15 U.S.C. § 1681s-2(b)

136.    Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

137.    At all times pertinent hereto, SRS was a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher of information" to the consumer reporting agencies, including Defendants Equifax and Experian.

138.    SRS has a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a dispute directly from a consumer, see 15 U.S.C. § 1681s-2(a).

139.    SRS failed to follow reasonable procedures to assure it only provided maximally accurate information about Plaintiff's Account to the consumer reporting agencies.

140.    On at least one occasion within the past two years, by example only and without limitation, SRS also violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

141.    Upon receipt of a consumer dispute from a consumer reporting agency, furnishers like SRS are required to: conduct an investigation with respect to the disputed information; review all relevant information; report the results of the investigation to the consumer reporting agency; and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other consumer reporting agencies to which the furnisher has provided the inaccurate information.

142.    Upon information and belief, SRS received notice of Plaintiff's disputes from Equifax and Experian within the same week.

143.    Each time SRS was notified of the issues with Plaintiff's SRS Account, SRS failed to properly investigate Plaintiff's disputes.

144.    Consequently, SRS failed to furnish maximally accurate information regarding Plaintiff's Account to Defendants Experian and Equifax.

145. Despite receiving and allegedly "investigating" **four** separate disputes from Plaintiff, SRS failed to recognize that it had inaccurately informed Equifax and Experian that Plaintiff still owed a balance of $2,930, when in fact the balance was negotiated down and paid off.

146. Upon information and belief, SRS also failed to send its investigation results to the other consumer reporting agencies that had received inaccurate or incomplete information about Plaintiff's Account.

147. Upon information and belief, SRS's actions in the instant matter are representative of its normal policies and procedures.

148. Upon information and belief, SRS's regular investigation procedures do not require a reasonable review of a tradeline that is disputed by a consumer. Rather, SRS's regular procedures allow it to respond to disputes after conducting only a cursory review of the Account at issue.

149. The above-described conduct violated 15 U.S.C. § 1681s-2(b).

150. SRS violated 15 U.S.C. § 1681s-2(b) in the following manner:

    i.   By willfully and/or negligently failing to conduct an investigation of the disputed Account;

    ii.  By willfully and/or negligently failing to review all relevant information concerning Plaintiff's Account;

    iii. By willfully and/or negligently failing to report the results of its investigation of the disputed Account to all credit reporting agencies;

    iv.  By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation of his disputes;

v.   By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation of the disputed information;

vi.   By willfully and/or negligently failing to permanently block the reporting of the inaccurate information and continuing to report and furnish inaccurate or incomplete information about Plaintiff's Account to credit reporting agencies; and

vii. By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

151.   As a result of this conduct, action, and inaction of SRS, Plaintiff has suffered actual damages, including but not limited to: reduced credit worthiness, credit denial, credit approval at less favorable rates, stress, anxiety, frustration, sleepless nights, humiliation, wasted time, financial strain, and other damages continuing in nature.

152.   SRS's violations of the FCRA were both willful and knowing. Therefore, SRS is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

153.   Alternatively, SRS's violations of the FCRA were negligent. Therefore, SRS is individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

154.   In any event, SRS is individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### Equifax and Experian's Violations of 15 U.S.C. § 1681e(b)

155.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

156.    The FCRA requires consumer reporting agencies, like Equifax and Experian, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximal accuracy. 15 U.S.C. § 1681e(b).

157.    Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation and maintenance of Plaintiff's consumer reports and consumer file.

158.    Specifically, Equifax and Experian failed to maintain procedures that ensured it did not inaccurately report Plaintiff's Account with a balance owed after Plaintiff informed them that the balance was paid off.

159.    Upon information and belief, Equifax and Experian have been sued by other consumers in the past who have alleged dispute procedures were unreasonable and violative of the FCRA.

160.    Therefore, Equifax and Experian had actual notice of their deficient procedures.

161.    In this case, however, Equifax and Experian both received actual notice that their procedures were unreasonable as applied to Plaintiff.

162.    It is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, especially when the information provided by a furnisher conflict with information the consumer reporting agency knows to be true.

163.    Alternatively, it is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, when it directly conflicts with the documentation a consumer provides alongside his dispute(s).

164.    As a result of this conduct, action, and inaction of Equifax and Experian, Plaintiff has suffered actual damages, including but not limited to: reduced credit worthiness, credit denial,

credit approval at less favorable rates, stress, anxiety, frustration, sleepless nights, humiliation, wasted time, financial strain, and other damages continuing in nature.

165.     Equifax and Experian's violations of the FCRA were both willful and knowing. Therefore, Equifax and Experian are both individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

166.     Alternatively, Equifax and Experian's violations of the FCRA were negligent. Therefore, Equifax and Experian are both individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

167.     In any event, Equifax and Experian are both individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT III
### Equifax and Experian's Violations of 15 U.S.C. § 1681i

168.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

169.     Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their consumer file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

170.     Equifax and Experian violated 15 U.S.C. § 1681i(a)(1) on multiple occasions by failing to conduct a reasonable investigation to determine whether the information it reported about Plaintiff and his Account was accurate.

171.    Equifax and Experian violated 15 U.S.C. § 1681i(a)(1) on multiple occasions by failing to correct or delete the inaccurate information reported on Plaintiff's consumer reports that indicated the Account had an outstanding balance.

172.    Upon information and belief, Equifax and Experian continued to blindly rely on inaccurate information provided by the furnisher despite possessing information provided by Plaintiff that directly conflicted with Plaintiff owing a balance of $2,930 on the Account.

173.    Upon information and belief, Equifax and Experian had reason to know that the information furnished by SRS was inaccurate or otherwise unreliable.

174.    Equifax and Experian possessed information provided by Plaintiff that directly contradicted SRS's reporting of a current balance of $2,930.

175.    Plaintiff had provided Equifax and Experian with proof of the settlement agreement with SRS, as well as the proof of his payment to SRS.

176.    Yet despite knowledge of the information's unreliability, Equifax and Experian made no independent effort to verify its accuracy.

177.    Upon information and belief, Equifax and Experian violated the FCRA by failing to provide SRS with all the relevant information regarding Plaintiff, his dispute, and the Account. 15 U.S.C. § 1681i(a)(2)(A).

178.    Equifax and Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer files upon reinvestigation of Plaintiff's disputes.

179.   Equifax and Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

180.   As a result of Equifax and Experian's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

181.   Equifax and Experian's violations of the FCRA were both willful and knowing. Therefore, Equifax and Experian are both individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

182.   Alternatively, Equifax and Experian's violations of the FCRA were negligent. Therefore, Equifax and Experian are both individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

183.   In any event, Equifax and Experian are both individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

184.   Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Derek Bennett, respectfully requests judgment be entered against Defendants, for the following:

  A.  Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

  B.  Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

  C.  Punitive damages pursuant to 15 U.S.C. § 1681n;

  D.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

  E.  Any pre-judgment and post-judgment interest as may be allowed under the law; and

F.   Other and further relief as the Court may deem just and proper.

Respectfully submitted this 29th day of November 2021,

/s/ David A. Chami
David A. Chami, AZ Bar #027585
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (480) 626-2359
Email: dchami@cjl.law